UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

YUAN CHEN,

               Plaintiff,

      v.

LYFT, INC., et al.,

               Defendants.

Case No.  24-cv-01330-TLT

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS FIRST
AMENDED COMPLAINT**

Re: Dkt. No. 48

Plaintiff Yuan Chen seeks to hold Defendants liable for securities fraud because Defendants corrected a misstatement within forty-two minutes.  According to Plaintiff, the misstatement was obvious—and the correction should have been immediate.

Pending before the Court is Defendants Lyft, Inc., David Risher, and Erin Brewer's motion to dismiss Plaintiff's first amended complaint.  ECF 48.  Having considered the parties' briefings, oral argument, and pleadings, the Court **GRANTS** Defendants' motion to dismiss with leave to amend.

## I.    BACKGROUND

Plaintiff Yuan Chen brings this securities fraud class action against Defendants for making a misleading statement in Lyft's February 13, 2024 Press Release.  First Am. Compl. ("FAC"), ECF 47.

Lyft is a Delaware corporation headquartered in San Francisco, California.  *Id.* ¶ 36. David Risher has been Lyft's CEO since April 2023 and Director of Lyft's board of directors since July 2021.  *Id.* ¶ 37.  Erin Brewer has been Lyft's CFO since July 2023.  *Id.* ¶ 39.

On February 13, 2024, at 4:05 p.m. eastern standard time, Lyft issued a Press Release that anticipated an "Adjusted EBITDA margin expansion . . . of approximately 500 basis points year-over year" for the 2024 fiscal year (the "Misstatement").  *Id*. ¶¶ 1 n.1, 5.  Lyft also published Supplemental Data in support of the Press Release.  *Id*. ¶ 6.

EBITDA is an acronym for Earnings Before Interest, Taxes, Depreciation, and Amortization.  *Id*. ¶ 5 n.2.  Lyft's Adjusted EBITDA is "calculated as Adjusted EBITDA divided by Gross bookings" and is a "critical financial metric" used in Lyft's SEC filings and quarterly operating results.  *Id*. ¶¶ 5 n.2, 7, 48.

After the Press Release, Lyft's stock surged by 67 percent, or $8.12 per share, in after-hours trading.  *Id*. ¶ 125.  The trading volume and stock price movement was "extremely high" on February 13, 2024 compared to prior quarters' earnings announcements.  *Id*. ¶ 245.  By 4:30 p.m., Lyft's shares had risen to $17.95 per share.  *Id*. ¶ 126.

However, forty-two minutes after the Press Release, at 4:47 p.m., Brewer corrected the Misstatement.  *Id*.  ¶¶ 22, 139.  During a conference call, Brewer stated, "[t]he combination of top-line growth, operational excellence, and continued cost discipline with the full-year impact of our more efficient cost structure is expected to drive approximately *50 basis points* of expansion in our Adjusted EBITDA margin as a percentage of gross bookings to 2.1%." *Id*.  ¶ 140 (emphasis added).  Brewer then said that her 50-basis points reference was "actually a correction from the Press Release."  *Id*.  ¶ 23.  After Brewer corrected the Misstatement, Lyft common shares began reversing and trading at $12.92 per share.  *Id*. ¶ 24.

At approximately 6:02 p.m., Defendants issued a corrected Press Release and Supplemental Data with the 50 basis-points reference.  *Id*. ¶¶ 26, 144.

The following day, during a February 14, 2024 interview, Risher said "you got things coming in at you from a thousand different directions and someone on the team noticed pretty fast that we were getting a lot of interest in the margin and she looked at the number and you could just see her jaw drop."  *Id*. ¶ 20.  In another interview, also on February 14, 2024, Risher said "we were getting a lot of interest in the [Adjusted EBITDA] margin."  *Id*. ¶ 247.

United States District Court
Northern District of California

Plaintiff claims Defendants fraudulently made the Misstatement and subsequently failed to correct the Misstatement.  Plaintiff brings this action for (1) violation of Section 10(b) of the Securities Exchange Act ("Exchange Act") and Rule 10b-5 promulgated thereunder and (2) violation of Section 20(a) of the Exchange Act.  Plaintiff seeks to represent all persons who purchased or otherwise acquired Lyft common shares on the U.S. open market during the class period of February 13, 2024, at 4:05 p.m. through February 13, 2024 at 4:51 p.m.  *Id.* ¶ 1.

Defendants moved to dismiss the FAC.  ECF 48.  Plaintiff timely filed an opposition, ECF 51, and Defendants timely filed a reply, ECF 53.  The Court heard oral arguments on January 14, 2025.

## II.    JUDICIAL NOTICE

Defendants seek judicial notice of seven documents: (1) the Press Release, (2) the corrected Supplemental Data, (3) Lyft's November 9, 2023 Form 10-Q for the 2023 third quarter, (4) Lyft's February 20, 2024 Form 10-K, (5) Lyft's May 9, 2024 Form 10-Q for the First Quarter of the 2024 fiscal year, (6) an April 7, 2019 article titled, *Lyft Threatens to Sue Morgan Stanley Over Short-Selling Trades*, and (7) Lyft's 2024 Proxy Statement.  ECF 48 at 1, n. 4; 48-2. Plaintiff does not oppose.  ECF 48 at 4 n.1.

"The Court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court may "consider materials that are submitted with and attached to the Complaint. [The Court] may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document."  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Because Plaintiff does not oppose Defendants' request, and because the exhibits are either regulatory filings or documents specifically cited to in the FAC, the documents are incorporated by reference and the Court takes judicial notice of the statements relied by Plaintiff in these filings.  *See Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) (The Court "may

1  consider documents referred to in the complaint or any matter subject to judicial notice, such as

2  SEC filings.").

3  **III.    LEGAL STANDARD**

4       Pursuant to Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon

5  which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To overcome a motion to dismiss, a

6  plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a

7  plausible chance of success.'"  *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1135 (9th Cir. 2014) (citing

8  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544

9  (2007)).  The Court "accept[s] factual allegations in the complaint as true and construe[s] the

10  pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire &*

11  *Marine Ins. Co*., 519 F.3d 1025, 1031 (9th Cir. 2008).  However, "conclusory allegations of law

12  and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v.*

13  *Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

14       "Securities fraud class actions must meet the higher, more exacting pleading standards of

15  Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act

16  ('PSLRA')."  *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc*., 774 F.3d 598, 604 (9th Cir. 2014).

17  Rule 9(b) dictates that the "circumstances constituting fraud or mistake shall be stated with

18  particularity."  Fed. R. Civ. P. 9(b).  It is not enough for a plaintiff merely to identify an allegedly

19  fraudulent statement made by defendants.  *In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1548 (9th

20  Cir. 1994) (en banc).  Plaintiffs must allege "why the disputed statement was untrue or misleading

21  when made."  *Id*. at 1549.  Moreover, "the complaint shall specify each statement alleged to have

22  been misleading, the reason or reasons why the statement is misleading, and, if an allegation

23  regarding the statement or omission is made on information and belief, the complaint shall state

24  with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).

25       The PSLRA additionally requires a complaint to "state with particularity facts giving rise

26  to a strong inference that the defendant acted with the required state of mind" with respect to each

27  alleged false statement or omission.  15 U.S.C. § 78u-4(b)(2)(A).  Plaintiffs alleging securities

28

United States District Court
Northern District of California

4

1    fraud must plead all the elements of a securities fraud action with particularity. *Or. Pub. Emps.*,

2    774 F.3d at 605.

3    **IV.    DISCUSSION**

4        **A.    Section 10(b) of the Exchange Act and Rule 10b-5**

5        "To recover damages for violations of section 10(b) and Rule 10b-5, a plaintiff must prove

6    (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection

7    between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon

8    the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v.*

9    *Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (citation and modifications omitted).

10        "Even when a plaintiff has adequately pleaded all six elements of a Section 10(b) claim,

11    the defendant may be protected under the PSLRA's 'safe harbor' provision for forward-looking

12    statements." *Glazer Cap. Mgmt., LP v. Forescout Tech., Inc*., 63 F.4th 747, 767 (9th Cir. 2023)

13        Here, Defendants argue (1) the PSLRA's Safe Harbor Provision protects the Misstatement

14    from liability; (2) Plaintiff fails to adequately allege scienter; (3) Plaintiff may not assert a Section

15    10(b) claim based on the duty to correct a statement; and (4) Plaintiff fails to assert claims based

16    on Defendants' Sarbanes-Oxley Certifications.  ECF 48.

17            **1.   The PSLRA's Safe Harbor Provision**

18        "Pursuant to the safe harbor, an issuer will not be liable with respect to any forward-

19    looking statement if . . . the statement is 'identified as a forward-looking statement and is

20    accompanied by meaningful cautionary statements identifying important factors that could cause

21    actual results to differ materially from those in the forward-looking statement.'" *Glazer*, 63 F.4th

22    at 767 (quoting 15 U.S.C. § 78u-5(c)).

23        Defendants argue the Misstatement—that Lyft's outlook for the 2024 fiscal year included

24    an "Adjusted EBITDA margin expansion 500 basis points"—is forward-looking and accompanied

25    by meaningful cautionary statements.

26                **a.   Forward-Looking Statement**

27        Defendants argue that the Misstatement is forward-looking because it involves Lyft's

28    projections of future financial results.  ECF 48 at 9.  Plaintiff argues the Misstatement is not

United States District Court
Northern District of California

1    forward-looking because it represented Lyft's current expectations, Defendants misstated their

2    current belief in their financial projections, and the Misstatement was mixed with non-forward-

3    looking statements.  ECF 51 at 10–11.

4         Here, the Misstatement concerns Lyft's EBITDA margin expansion for the 2024 fiscal

5    year and is, therefore, a statement concerning Lyft's anticipated financial growth for 2024.  *See*

6    FAC ¶ 48 (describing EBITDA margin as a "critical financial metric").  The Press Release also

7    identified the Misstatement as a forward-looking statement.  *See* ECF 48-3 at 4 ("This press

8    release contains forward looking statements . . . Forward-looking statements include . . . Lyft's

9    guidance and outlook, including for the first quarter and full fiscal year 2024, and the trends and

10   assumptions underlying such guidance and outlook, Lyft's plans and expectations for fiscal year

11   2024 . . . .").  This "classic growth and revenue projection[]" is "forward-looking on [its] face."

12   *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc*., 759 F.3d 1051, 1058 (9th Cir. 2014); s*ee*

13   *also id.* ("Statements such as '[i]nstrument and accessor[ies] revenues . . . are expected to grow

14   approximately 55% over 2007,' 'we continue to expect dVP procedures to grow approximately

15   40% . . ." and 'we are now forecasting our system revenue to grow 45–46% over 2007,' are

16   illustrative examples of Intuitive's revenue projections."); *Glazer*, 64 F.4th at 774 (holding

17   statements are forward-looking because they constitute "statement[s] of future economic

18   performance.") (internal citations omitted); *Kong v. Fluidigm, Corp*., 2023 WL 2134394, at *1

19   (9th Cir. 2023) ("Many of the statements at issue are classic growth and revenue projections,

20   which are forward-looking on their face.") (internal quotations omitted).

21        Moreover, the FAC fails to allege any facts demonstrating how a statement about Lyft's

22   anticipated Adjusted EBITDA contained an express or implied concrete assertion concerning a

23   specific current or past fact.  *See Wochos v. Tesla*, 985 F.3d 1180, 1191 (9th Cir. 2021) ("[T]o

24   establish that a challenged statement contains non-forward-looking features . . . a plaintiff must

25   plead sufficient facts to show that the statement goes beyond the articulation of plans, objectives,

26   and assumptions and instead contains an express or implied concrete assertion concerning a

27   specific current or past fact.")  (cleaned up)  Plaintiff's speculation does not change the fact that

28   Lyft's Misstatement involves management's anticipated financial performance.  *See Intuitive*

United States District Court
Northern District of California

6

*Surgical*, 759 F.3d at 1058 ("The PSLRA's safe harbor provision exempts . . . 'any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions underlying or related to any of these issues") (citing 15 U.S.C. § 78u-5(i)(1)(A)-(D)).

Accordingly, the Misstatement is a forward-looking statement. *Cf. id.* at 1059 ("We need not resolve whether the safe harbor covers non-forward-looking portions of forward-looking statements because, examined as a whole, the challenged statements related to future expectations and performance.").

### b.  Meaningful Cautionary Statements

The Court next considers whether the Misstatement was accompanied by meaningful cautionary statements.

Plaintiff argues the Misstatement was not accompanied with a meaningful cautionary statement because Defendants only warned of generic risks.  ECF 51 at 12.

However, the Press Release cited "risks related to the macroeconomic environment and impact of the COVID-19 pandemic and risks regarding [Lyft's] ability to forecast our performance due to our limited operating history and the macroeconomic environment."  ECF 48-3 at 4.  The Press Release also stated that Lyft's expectations and beliefs were subject to risks identified in Lyft's Form 10-Q.  *Id.*  Lyft's Form 10-Q lists at least forty-four risk factors, including Lyft's autonomous vehicle technology, classification of drivers on its platform, and future capital requirements.  ECF 48-5 at 60–61.  Plaintiff failed to explain why these warnings are simply generic.

Accordingly, the Court finds that the Press Release contained warnings of specific factors and, therefore, provided a meaningful cautionary statement.  *See Kong*, 2023 WL 2134394 at *1 (finding "comments were accompanied by meaningful cautionary language in Fluidigm's SEC filings and analyst calls, which warned investors of the potential for increased competition and market fluctuations.").

//

//

### 2. Scienter

Separate from the Safe Harbor Provision, Defendants argue the FAC fails to allege that Defendants were aware of the error in the Misstatement prior to its publication.  ECF 48 at 11.

In response, Plaintiff argues that, as demonstrated in Professor Gregory's expert opinion, scienter is supported by the fact that analysts and investors would have been surprised by the Misstatement, making a strong inference that at least one analyst would contact Defendants immediately after the issuance of the Misstatement to obtain clarification.  ECF 51 at 16–19; FAC ¶ 19.  Plaintiff also asserts that, because of Risher and Brewer's positions as CEO and CFO, Risher and Brewer must have had access to the Misstatement before its release.  ECF 51 at 18; FAC ¶ 45.  Finally, Plaintiff argues Risher's interview statement, that a team member "noticed pretty fast that we were getting a lot of interest in the margin," demonstrates scienter.  ECF 51 at 15.

"To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'"  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (citation omitted).  Plaintiffs must show that "the defendants made false or misleading statements either intentionally or with deliberate recklessness."  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009), *as amended* (Feb. 10, 2009).  "'Deliberate recklessness' is more than '*mere* recklessness or a motive to commit fraud.'  It is instead 'an *extreme* departure from the standards of ordinary care,' which 'presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'"  *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020) (citations omitted) (emphasis in original).

"The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  *Tellabs*, 551 U.S. at 322–23 (citation omitted).  "[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences."  *Id.* at 323.  "[T]he inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other

8

explanations." *Id.* at 324. "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

Here, the FAC fails to adequately allege that Defendants acted with scienter prior to the publication of the Misstatement. Plaintiff's reliance on the fact that the Misstatement would have been surprising and called to Risher and Brewer's attention is conclusory and does not address Defendants' mental state when the Misstatement was made.

Moreover, Plaintiff cannot rely on Professor Gregory's expert opinion to establish scienter. Although "[t]here is authority for the proposition that a plaintiff can support a securities fraud claim with opinions provided by an expert," district courts may only consider allegations from experts if such factual allegations satisfy the same standard applied to confidential informant. *Sgarlata v. PayPal Holdings, Inc.*, 409 F. Supp. 3d 846, 860 (N.D. Cal. 2019). That standard has two prongs: the expert's opinion must (1) be described with sufficient particularity to establish the expert's reliability and personal knowledge; and (2) themselves be indicative of scienter. *Id.* Plaintiff offered no argument, either in his opposition or during oral argument, to show that Professor Gregory meets this standard. Accordingly, the Court finds that Professor Gregory's opinion is not indicative of scienter. The Court declines Plaintiff's invitation to rely on Professor Gregory's expert opinion at this stage of the proceedings.

To the extent Plaintiff relies on Defendants' positions in Lyft to establish scienter, the Court finds that the core operations doctrine does not save Plaintiff's claim. "The core operations theory of scienter relies on the principle that 'corporate officers have knowledge of the critical core operation of their companies.'" *Intuitive Surgical*, 759 F.3d at 1062. A complaint must offer "specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations, such as data monitoring, or witness accounts demonstrating that executives had actual involvement in creating false reports." *Id.* The FAC fails to meet this requirement.

The Court finds Plaintiff failed to adequately allege scienter. Plaintiff's Section 10(b) claim is dismissed.

### 3. The FAC's Duty to Correct Claim

Regarding Plaintiff's duty to correct theory of liability, Defendants argue that the theory is not viable because the Ninth Circuit has not recognized a duty to correct. ECF 48 at 12. Plaintiff argues that the theory has not been expressly prohibited by the Ninth Circuit. ECF 51 at 9 n.7.

Whether a plaintiff may proceed on a duty to correct theory appears to be an open question of law. *See Oaktree Principal Fund V, L.P. v. Warburg Pincus LLC,* 2018 WL 6137169, at *12 (C.D. Cal. 2018) ("In declining to decide whether a duty to correct exists, the Ninth Circuit left the question open"). However, the Court need not address the open question because the FAC fails to allege why the corrected statement—stated 42 minutes after the Press Release's publication—was not made within a reasonable amount of time. *Compare with, In re Yahoo! Inc. Securities Litig.*, 611 F. App'x. 387, 390 (9th Cir. 2015) ("[E]ven if we were to recognize a duty to correct, which we do not, appellees have not violated such a duty because they corrected the prior statements within a reasonable time . . . . [S]ix weeks was a reasonable time for appellees to correct their pre-class period statements.") (internal quotation omitted).

The Court dismisses Plaintiff's 10(b) claim to the extent it relies on the duty to correct.

### c. The FAC's Sarbanes-Oxley Certifications Claim

Defendants move to dismiss Plaintiff's 10(b) claim to the extent it relies on Defendants' filing of Sarbanes-Oxley Certifications. ECF 48 at 16–19. Plaintiff does not oppose dismissal. *See* ECF 51 at 22 n.19 ("Plaintiff does not argue, as Defendants suggest, that Defendants' certification of internal controls was itself fraudulent . . . . Rather, Plaintiff contends that the inadequacy of those internal controls, for which Defendants were responsible, needs to be considered 'holistically' in determining whether Defendants were deliberately reckless in misstating Lyft's Adjusted EDITDA margin").

Accordingly, to the extent Plaintiff's claims rely on statements in Defendants' Sarbanes-Oxley Certifications, those claims are dismissed.

\*     \*     \*

Considering the analysis herein, the Court **GRANTS** Defendants' motion to dismiss Plaintiff's Section 10(b) claims with leave to amend. *See In re Twitter, Inc. Securities Litig*., 506 F. Supp. 3d 867, 891 (N.D. Cal 2020) ("While it is not apparent that plaintiffs can amend, out of an abundance of caution, the Court provides leave to amend."); *In re Saxton, Inc. Sec. Litig.,* 156 F. App'x. 917, 921 (9th Cir. 2005) ("Adherence to liberal grants of leave to amend is especially important in the context of the PSLRA.") (internal quotation omitted).

### B.   Section 20(a) of the Exchange Act

Defendants argues the FAC fails to allege control person liability under Section 20(a) because the complaint fails to allege a primary violation of Section 10(b).  ECF 48 at 19.

"In order to prove a prima facie case under § 20(a), plaintiff must prove: (1) a primary violation of federal securities laws . . .; and (2) that the defendant exercised actual power or control over the primary violator . . . ." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (citation omitted).  "Section 20(a) provides derivative liability for those who control others found to be primarily liable under the Act." *Kyung Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1205 (N.D. Cal. 2012) (citation omitted).  "Where a plaintiff asserts a Section 20(a) claim based on an underlying violation of Section 10(b), the pleading requirements for both violations are the same." *Id.* (citation omitted).

As discussed above, the Court found that Plaintiff failed to plead a violation of Section 10(b) of the Exchange Act.  Accordingly, Plaintiff's claim under Section 20(a) also fails and is dismissed.

### C.   Leave to Amend

Pursuant to Rule 15(a)(2), A party may amend its pleadings with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires." *Id.*  This policy is applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (internal citation omitted).  The nonmovant bears the burden of demonstrating why leave to amend should not be granted. *DCD*

United States District Court
Northern District of California

*Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).  The Supreme Court has outlined five factors to consider in deciding whether leave to amend is warranted: (1) bad faith on the part of the movant, (2) undue delay by the movant, (3) repeated amendments by the movant, (4) undue prejudice to the nonmovant, and (5) futility of the proposed amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court finds that the prejudice to Defendant in allowing amendment is minimal.  After considering the remaining Rule 15 factors, the Court finds that the presumption in favor of granting leave to amend under Rule 15 applies.

Plaintiff may not plead new claims.  Should the scope of any amendment exceed the leave to amend granted by this order, the Court will strike the offending portions of the pleading under Rule 12(f).  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading").

Over Defendants' objection, Plaintiff may file a second amended complaint within 21 days of this Order, and no later than <u>February 6, 2025</u>.  Failure to cure the deficiencies identified in this Order will result in dismissal of Plaintiff's claims with prejudice.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.  Plaintiff's claims for violation of Sections 10(b) and 20(a) of the Exchange Act are dismissed, with leave to amend.

//

//

1    The Further Case Management Conference set for 4/24/2025 at 2:00 PM in San Francisco -

2    Videoconference Only is maintained.  Joint Case Management Statement due by 4/17/2025.  All

3    previously scheduled dates are maintained except as modified in ECF 52 and 58.  *See also* ECF

4    33.

5    This Order resolves ECF 48.

6    IT IS SO ORDERED.

7    Dated: January 16, 2025

8    _____
      TRINA L. THOMPSON

9    United States District Judge

10

11    3/5/27

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28